UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
DENNIS J. BUCKLEY, AS TRUSTEE OF THE      :
DVI LIQUIDATING TRUST,                    :
:                    06 Civ. 3291 (SHS)
Plaintiff,       :
:                    OPINION
-against-           :
:
DELOITTE & TOUCHE USA LLP and             :
DELOITTE & TOUCHE LLP,                    :
:
Defendants.      :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

In 2003, a healthcare finance company called DVI, Inc. defaulted on the interest

payment that was due on its public bond debt and subsequently filed for bankruptcy

pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

Subsequently, a plan for liquidation was confirmed by the bankruptcy court and plaintiff

Dennis J. Buckley was named the Trustee of DVI's Liquidating Committee.  He now

brings this action against Deloitte & Touche USA LLP and Deloitte & Touche LLP

(collectively, "Deloitte"), which served as public auditor and accountant to DVI in the

decade leading up to the company's default and bankruptcy.  Buckley's complaint

alleges, inter alia, that Deloitte: was aware of and participated in the improper actions of

certain DVI insiders, including its Chief Executive Officer and two Executive Vice

Presidents; failed to scrutinize sufficiently the DVI insiders' allegedly improper

accounting for related party transactions and other financial improprieties; improperly

issued unqualified audit opinions on DVI's financial statements; participated in the DVI

insiders' misrepresentations to the SEC and to DVI itself; and abruptly withdrew from its engagement with DVI prior to completing the auditing services it had contracted to perform.  Buckley brings claims against Deloitte for:  1) professional malpractice; 2) breach of contract; 3) negligent misrepresentation; 4) common law fraud; 5) aiding and abetting fraud; 6) aiding and abetting breach of fiduciary duty; and 7) deepening insolvency.  The parties have stipulated that Pennsylvania law governs all of these claims except for the sixth claim for aiding and abetting breach of fiduciary duty.  (Stipulation dated May 7, 2007, ¶ 1.)  The parties disagree regarding what law governs the latter claim.

Defendants have now moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint asserting that because Buckley stands in the place of DVI, plaintiff's claims are barred by the doctrine of *in pari delicto*.  This affirmative defense allows a Court to bar a wrongdoer from recovering against his fellow wrongdoer where the plaintiff bears at least substantially equal responsibility as the defendant for the violations he seeks to redress.  The *in pari delicto* doctrine is based in equity, and therefore courts have discretion whether to apply the defense in any particular case.  Here, Deloitte contends that the DVI insiders' actions were intended to benefit DVI, or at least stemmed from a dual motive of benefiting both DVI and themselves, and therefore this Court should impute their actions to DVI and apply *in pari delicto*.  However, because this Court must draw all reasonable inferences in favor of plaintiff for purposes of this motion to dismiss, it cannot ignore the allegations within Buckley's complaint that suggest that the DVI insiders acted entirely for their own benefit.  Thus, the Court will not – based solely on

the face of the pleadings it has before it – impute the DVI insiders' allegedly improper conduct to DVI.  Accordingly, the current motion to dismiss should be denied to the extent it is based on the affirmative defense of *in pari delicto*.

In addition, Deloitte also seeks to dismiss all seven of Buckley's claims based on multiple legal theories independent from the doctrine of *in pari delicto*.  For the reasons expressed below, defendant's motion to dismiss must be denied in part and granted in part.  Specifically, Deloitte's motion must be denied to the extent it seeks to dismiss Claim I, Claim II, Claim III, Claim IV, Claim VI, and Claim VII.  However, because Pennsylvania law does not recognize a cause of action for aiding and abetting fraud, Deloitte's motion to dismiss Claim V is granted.

## I.   Background

The following facts are alleged in the complaint, and are accepted as true for purposes of this motion.

DVI, Inc. – through its wholly-owned subsidiaries – DVI Financial Services ("DVI-FS") and DVI Business Credit ("DVI-BC") – was in the business of extending loans and lease financing to healthcare providers.  (Compl. ¶ 2.)  DVI-FS leased diagnostic imaging and other sophisticated medical equipment as well as lower cost medical devices.  (Id. ¶ 3.)  DVI-BC provided working capital loans to healthcare providers secured by their accounts receivable and other assets.  (Id. ¶ 4.)

DVI and its subsidiaries (collectively, "DVI") retained Deloitte to serve as public accountant and independent auditor in 1994, and this engagement lasted until Deloitte withdrew its services in 2003.  (Id. ¶ 33-34.)  During that time period, the complaint

alleges, "[i]nsiders at DVI prepared specious financial statements and engaged in fraudulent conduct in order to conceal operational losses." (Id. ¶ 67.) Through these actions, "DVI insiders defrauded DVI's investors, regulators, bond holders, note holders, creditors, and shareholders." (Id.) These "insiders" included: Michael O'Hanlon – Chief Executive Officer, President, and a Director of DVI (id. ¶ 49); Steven Garfinkel – Executive Vice President and Chief Financial Officer of DVI (id. ¶ 219); and Richard Miller – Executive Vice President of DVI (id. ¶ 227). Specifically, these DVI insiders engaged in fraudulent activities including:

- "Repurchasing at par delinquent loans from securitizations into which they had been transferred without obtaining commensurate value;"

- "Transferring to various securitizations performing leases in exchange for delinquent leases without obtaining commensurate value;"

- "'Round-Tripping,' – the practice of transferring funds from DVI-FS to DVI-BC for the purpose of DVI-BC advancing or over-advancing the same funds as working capital loans to troubled borrowers, who would in turn use the funds to repay their delinquent lease obligations to DVI-FS or its securitization;"

- "Transferring delinquent leases to a select group of borrowers for the purpose of falsely recharacterizing such delinquent loans as performing loans;"

- "Pledging as collateral to lenders leases and loans that failed to meet the respective lender's eligibility criteria, in order to obtain otherwise unavailable advances from lines of credit;"

- "Pledging the same collateral to two or more lenders to obtain otherwise unavailable advances from lines of secured credit;"

- "Subverting, disregarding and/or failing to implement internal controls and financial reporting procedures, especially with respect to the credit-worthiness of borrowers and the impairment of assets pledged as collateral to lenders or transferred to securitizations;"

- "Willfully choosing not to recognize or write-off losses;"

- "Deliberately refusing to take adequate loss reserves;"

- "Awarding raises and severance packages to select employees to assure their continued acquiescence to, or cooperation in, the aforementioned activities;"

- "Failing to supervise the management and operations of DVI;"

- "Improperly recognizing gain on sale;" and

- "Improperly accounting for transactions with related entities and other borrowers."

(Id. ¶ 68.)  Moreover, the complaint alleges that these DVI insiders acted contrary to DVI's interests and for their own gain:

> O'Hanlon, Garfinkel and Miller . . . [k]new of DVI's financial support and investments in non-core businesses that diverted millions of dollars from DVI at times during which DVI was illiquid and could not otherwise afford such practice with the intent of supporting their friends and/or building a personal empire and with the intent of concealing the financial condition of DVI and continuing in their positions and personally profiting therefrom.

(Id. ¶ 228.)

Despite these irregularities, Deloitte nevertheless "issued clean audit reports on DVI's financials."  (Id. ¶ 70.)  In addition to auditing DVI's annual reports and reviewing its quarterly financials during each of the relevant years, Deloitte also provided DVI with a number of consulting services, including advising DVI with regard to compliance with several "Statement of Financial Accounting Standards" and other accounting regulations, helping DVI implement cash control procedures, and assisting DVI in responding to multiple inquiries from the SEC.  (Id. ¶¶ 37, 63.)  By virtue of its extensive work for DVI

during this almost ten-year period, Deloitte personnel had "continuous and unfettered access to, and knowledge of, DVI's confidential internal corporate, financial, operating and business information." (Id. ¶ 66.)  Thus, Deloitte "had ample opportunity to examine and analyze DVI's accounting practices, test the transactions recorded in DVI's internal and publicly reported financial statements, and assess DVI's internal controls." (Id.)

Deloitte was DVI's auditor and accountant for nearly a decade before it abruptly resigned on June 2, 2003 – shortly before DVI's default. (Id. ¶¶ 33-34, 36, 52, 63, 140.) Despite years of financial statements certified by Deloitte evidencing robust financial health, DVI defaulted on the interest payment that was due on its public bond debt on July 30, 2003. (Id. ¶¶ 13, 40.)  DVI's default on its bond debt, and the discovery and disclosure of financial fraud by its management, allegedly led to a crisis of confidence on the part of both its customers and lenders, and ultimately forced DVI into bankruptcy. (Id. ¶¶ 12-14, 124.)

In August 2003, DVI filed for bankruptcy protection under Chapter 11 in the United States Bankruptcy Court for the District of Delaware. (Id. ¶ 14.)  In September 2004, DVI and its subsidiaries filed a joint plan of liquidation with the U.S. Bankruptcy Court for the District of Delaware, and that Court confirmed an amended liquidation plan in November 2004. (Id. ¶ 25.)  Pursuant to this plan, the DVI "[d]ebtors transferred all of their remaining assets to [the unsecured creditors], who in turn contributed assets to the DVI Liquidating Trust." (Id. ¶ 28.)  The liquidating trust "was created to collect, hold, liquidate, and distribute the DVI trust estate and administer, compromise, settle, withdraw, object to, or litigate the 'Litigation Claims' as defined" in the liquidating plan.

(Id. ¶ 29.)  Pursuant to his role as trustee of the liquidating trust organized pursuant to this

plan, Buckley filed this lawsuit against Deloitte in April 2006.

Buckley has also filed a separate action against DVI's former officers and

directors alleging that they engaged in a massive fraud to deceive DVI's creditors and

shareholders, (see Complaint in Official Committee of Unsecured Creditors of DVI v.

O'Hanlon, D. Del., No. 04-CV-955), as well as one against the law firm that previously

represented DVI.  See Buckley v. Clifford Chance, et al., E.D. Pa., No. 06-CV-1003; see

also In re DVI, Inc. Sec. Litig., E.D. Pa, No. 03-CV-5336; WM High Yield Fund, et al. v.

O'Hanlon, et al., E.D. Pa., No. 04-CV-3423; Fleet National Bank v. O'Hanlon, et al.,

E.D. Pa., 04-CV-1277.

## II.     Discussion

### A.     Legal Standard

This Court can grant a motion to dismiss a complaint pursuant to Fed. R. Civ. P.

12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief."  Equal Employment Opportunity

Comm. v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d. Cir. 2000) (quoting Conley v.

Gibson, 335 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)) (internal quotation

marks omitted).  In reviewing a motion to dismiss, the court must treat all factual

allegations in the complaint as true and must draw all reasonable inferences in favor of

the non-moving party.  Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000);

Lee v. Bankers Trust Co., 166 F.3d 540 (2d Cir. 1999).

In addition, "a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense 'if the defense appears on the face of the complaint.'"  Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir.1998)); see also McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004); Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).

> **B.**      **This Court Will Not Apply the Equitable Defense of In Pari Delicto Because it is Not Clearly Warranted Based Only On the Face of Plaintiff's Complaint.**

Deloitte contends that Buckley's claims are barred as a matter of law because the trustee, standing in the place of DVI, was *in pari delicto* with Deloitte.  That doctrine derives from the Latin, *in pari delicto potior est conditio defendentis*:  "'In case of equal or mutual fault . . . the position of the [defending] party . . . is the better one.'"  Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 306, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985) (quoting Black's Law Dictionary 711 (5th ed. 1979)).  Courts may only apply this doctrine "where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public."  Id. at 310-11.  Additionally, the defense should not be allowed "[u]nless the degrees of fault are essentially indistinguishable or the plaintiff's responsibility is clearly greater."  Pinter v. Dahl, 486 U.S. 622, 636, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988).

1.  *While Courts May Apply* In Pari Delicto *On a Motion to Dismiss When It is Clearly Warranted Based on the Face of the Complaint, the Defense Should Not Be Applied When Fact-Specific Determinations Are Required.*

Deloitte correctly insists that courts may appropriately apply the doctrine of *in pari delicto* on a motion to dismiss on those occasions when issues of imputation from insiders to a corporation, as well as issues of relative fault between the parties to the litigation, are clearly established by the allegations on the face of the complaint.  See Nisselson v. Lernout, 469 F.3d 143, 153 (1st Cir. 2006); Baena v. KPMG LLP, 453 F.3d 1, 8 (1st Cir. 2006); In re Parmalat Sec. Litig., 383 F. Supp. 2d 587, 596-99 (S.D.N.Y. 2005) (court applied *in pari delicto* to bar some, but not all, of plaintiff's claims because plaintiff clearly alleged in its complaint that the bankrupt company itself had engaged in the massive fraud).

However, even some of these same courts that have applied the doctrine on a motion to dismiss have conceded that "[i]f there were raw facts at issue that (if credited by a factfinder) might make out a claim for looting, or if the case for imputation were merely a close one, we might agree with the trustee's argument and leave this question to the factfinder."  Baena, 453 F.3d at 8.

Other courts have expressed caution about their ability to apply the equitable doctrine in the context of a motion to dismiss given the fact-specific nature of the issues addressed in the relevant complaint.  See, e.g., In re Student Fin. Corp., 335 B.R. 539, 547 (D. Del. 2005) ("The Court concludes that the affirmative defense of *in pari delicto*, not having been established on the face of the Complaint, does not compel dismissal of

Count I at this stage of the proceedings."); <u>In re Total Containment</u>, 335 B.R. 589, 621 (Bankr. E.D. Pa. 2005) (finding that *in pari delicto* was "not established on the face of the complaint and cannot be considered in the context of a motion to dismiss."); <u>In re Adelphia Commc'ns Corp.</u>, 330 B.R. 364, 381 (Bankr. S.D.N.Y. 2005) ("[T]he Creditors' Committee has satisfactorily pleaded the facts necessary to trigger the exception [to *in pari delicto*], and that will present an issue of fact, plainly inappropriate for determination under Rule 12(b)(6)."); <u>In re Bennett Funding Group, Inc.</u>, NO. 96-70195A, 1997 Bankr. LEXIS 2366, *28 (Bankr. N.D.N.Y. 1997).

For example, Judge Leonard B. Sand of this District was presented with a motion to dismiss based on the *in pari delicto* defense in response to a lawsuit – much like the present one – by the debtor of a now bankrupt corporation against its former accountants. <u>See</u> <u>In re Wedtech Corp.</u>, 81 B.R. 240, 242 (S.D.N.Y. 1987).  The outcome of that motion to dismiss depended – as it does here – on whether the actions of the corporation's managers could be imputed to the corporation itself.  Judge Sand described the complex issues facing the Court as follows:

> It is possible that, in the end, it will be found that management was indeed acting in whole or in part for the "benefit" of Wedtech, in which case the "adverse interest" exception would not apply, and Wedtech would be estopped from bringing claims against its accountants.  However, it is also possible that the misconduct was entirely oriented toward the ultimate bleeding of Wedtech by its corrupt managers, in which case the "adverse interest" exception would be operative.  On this record the Court cannot sustain the accountants' position that the knowledge and conduct of Wedtech's former managers must be legally imputed to Wedtech and thus prevent Wedtech from asserting claims against them.

Id. at 242.  Assessing all of the aforementioned cases, this Court concludes that while it certainly may apply the doctrines of imputation and *in pari delicto* on a motion to dismiss when they are clearly established based on the face of the complaint, when the issues involved in such determinations are fact-specific, they are incapable of resolution upon a motion to dismiss.  With this principle in mind, the Court turns to the specific allegations in Buckley's complaint.

> 2.    *Based Only on the Allegations in Buckley's Complaint, the DVI Insiders' Conduct Cannot Clearly Be Imputed to DVI, and Therefore the Court Cannot at This Stage of the Lawsuit Apply the* In Pari Delicto *Doctrine.*

In this action, the Court's decision whether or not to apply the doctrine of *in pari delicto* hinges upon whether the conduct of the DVI insiders should be imputed to DVI itself.  "Under the law of imputation, courts impute the fraud of an officer to a corporation when the officer commits the fraud (1) in the course of his employment, and (2) for the benefit of the corporation."  Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 358 (3d Cir. 2001) (describing Pennsylvania law).  In the present action, the allegations in Buckley's complaint leave no doubt that the first part of the imputation test is satisfied – the fraud allegedly perpetrated by the DVI insiders took place in the course of their employment for DVI.

However, "under [the adverse interest] exception [to the second part of the imputation test], fraudulent conduct will not be imputed if the officer's interests were adverse to the corporation and not for the benefit of the corporation."  Id. at 359 (internal citation and quotation marks omitted).  Here, Buckley contends that the actions of DVI's

managers were adverse to the interests of the corporation because "not only was DVI injured by the loss and misuse of its resources [], but O'Hanlon, Garfinkel and Miller personally profited."  (Compl. ¶ 149.)

In order to avoid imputation, it is not sufficient for Buckley to allege that the DVI insiders were serving their own interests as well as those of the corporation.  See Baena v. KPMG LLP, 453 F.3d 1, 8 (1st Cir. 2006) ("Nor does it matter that the implicated managers also may have seen benefits to themselves – that alone does not make their interests adverse.").  As then Chief Judge Richard Posner explained in a decision of the U.S. Court of Appeals for the Seventh Circuit, a principal "is bound even if the agent has a dual motive, as where a police officer in lawfully arresting a man steals his wallet." Hartmann v. Prudential Ins. Co. of Am., 9 F.3d 1207, 1210 (7th Cir. 1993).  Indeed, Pennsylvania courts have ruled that for the adverse interest exception to apply pursuant to Pennsylvania law, the agent must have "totally abandoned" the principal's interest and be working "entirely" for his own purposes.  See In re Walnut Leasing Co., No. 99-526, 1999 U.S. Dist. LEXIS 14517 (E.D. Pa Sept. 9, 1999); In re Phar-Mor, Inc. Sec. Litig., 900 F.Supp. 784, 786 (W.D. Pa. 1995) ("A corporation is not imputed with the 'knowledge of an agent in a transaction in which the agent secretly is acting adversely to the [corporation] and entirely for his own or another's purposes.'" (citations omitted) (quoting Restatement (Second) of Agency § 282(1)(1957)).

However, Buckley's complaint does in fact allege that O'Hanlon, Garfinkel and Miller totally abandoned the interests of DVI and acted entirely for their own purposes. For example, the complaint alleges that "[t]he DVI insiders defrauded DVI's . . .

shareholders." (Compl. ¶ 67.) Such an allegation does not suggest that the insiders had a dual motive to benefit themselves as well as the corporation; rather, it suggests that the insiders benefited themselves at the expense of the corporation and its shareholders.

Indeed, several of Buckley's allegations contend that O'Hanlon, Garfinkel and Miller engaged in self-dealing, and perhaps even looting. For example, the complaint alleges that "DVI insiders also continuously alienated and dissipated assets through improper transfers to funds of securitizations, non-core businesses, foreign operations, certain favored provider accounts, and others." (Id. ¶ 257.) Similarly, Buckley's allegation that most directly contends that DVI insiders acted completely contrary to DVI's interests states as follows:

> O'Hanlon, Garfinkel and Miller . . . [k]new of DVI's financial support and investments in non-core businesses that diverted millions of dollars from DVI at times during which DVI was illiquid and could not otherwise afford such practice with the intent of supporting their friends and/or building a personal empire and with the intent of concealing the financial condition of DVI and continuing in their positions and personally profiting therefrom.

(Id. ¶ 228) (emphasis added). Reading these allegations in the light most favorable to plaintiff, as the Court is required to do on a motion to dismiss, Buckley's contention that the culpable insiders "invest[ed] in non-core business that diverted millions of dollars from DVI . . . with the intent of supporting their friends and/or building a personal empire" is an allegation of complete self-dealing.

In the presence of similar allegations, another court has refused to apply the defense of *in pari delicto* for at least the particular portion of plaintiff's complaint that

alleged such self-dealing, although it applied the defense to separate parts of plaintiff's

complaint.  See In re Parmalat Sec. Litig., 383 F. Supp. 2d at 599.  That Court found:

> By any standard, theft from a corporation by insiders is self dealing
> by the insiders and not in any sense in the interest of the entity.
> The insiders' actions and knowledge in engaging in such conduct
> therefore cannot be imputed to the company.  Accordingly, to the
> extent that the complaint alleges that [defendant] assisted the
> insiders in stealing from Parmalat, *in pari delicto* does not apply.

Id.  In the context of the present action, it is more appropriate to decline to apply the

equitable remedy of *in pari delicto* for the entire complaint.  In light of allegations of

self-dealing with respect to certain of the insiders' improper conduct, it is difficult to

conclude that the allegations in other potions of the complaint are clear on their face that

the insiders' intent was not also to benefit themselves at the expense of the corporation.

According to Deloitte, however, Buckley has at most alleged that the insiders

possessed a "dual motive" to benefit themselves as well as DVI.  To support this

argument, Deloitte cites to portions of the complaint in which Buckley suggests that the

insiders' actions also benefited DVI by "lower[ing] borrowing costs," "attract[ing]

investors and lenders," and "rais[ing] capital."  (Compl. ¶¶ 7, 20, 42.)  However, these

quotes must be viewed in their full context, in which Buckley alleges, for example, that

the additional capital was raised as part of DVI's "Ponzi-schemed existence."  (Id. ¶ 42.)

Moreover, this Court cannot find that the insiders' motive was dual in light of Buckley's

allegation that O'Hanlon, Garfinkel and Miller diverted millions of dollars from DVI

"with the intent of supporting their friends and/or building a personal empire."  (Id. ¶

228.)  This allegation taints any other portion of the complaint in which the language

might otherwise suggest that DVI perhaps experienced some sort of benefit from the

insiders' actions.  For example, even if Buckley alleges in one portion of the complaint that the insiders helped DVI to raise capital, the Court cannot conclude that this benefited DVI if the complaint subsequently alleges that the insiders diverted DVI's capital to their friends and to themselves with the intent of self-dealing.  Thus, Buckley's allegations of self-dealing are sufficient for this Court to conclude that plaintiff has alleged that the insiders were acting entirely for their own benefit in all of the improper actions they took while managing DVI, at least for purposes of this motion to dismiss, where plaintiff must be given the benefit of the doubt.

Finally, this Court must take into account equitable considerations when deciding whether to apply the doctrine of *in pari delicto*.  See In re Personal & Bus. Ins. Agency, 334 F.3d 239, 246 (3d Cir. 2003) ("If the doctrine of imputation were applied to bar PBI's recovery, that application would lead to an inequitable result."); Universal Builders, Inc. v. Moon Motor Lodge, Inc., 430 Pa. 550, 555 (1968) (*In pari delicto* "should not be invoked if its application will produce an inequitable result.").  Here, the Court must be mindful of the objectives of tort liability, which include the deterrence of future wrongdoing.  It follows that future auditors and accountants may not be deterred from participating in fraudulent conduct if claims such as those presented in this complaint were not allowed to go forward beyond the pleading stage.  Accordingly, this Court shall not apply the equitable defense of *in pari delicto* on this motion to dismiss.

C.     Defendant's Motion To Dismiss Plaintiff's First, Second, Third, Fourth, Sixth, and Seventh Claim is Denied, but Defendant's Motion To Dismiss Plaintiff's Fifth Claim is Granted.

In addition to its arguments in favor of the affirmative defense of *in pari delicto*, Deloitte also seeks to dismiss all seven of Buckley's claims based on nine independent legal reasons.  For the reasons expressed below, defendant's motion to dismiss must be denied for six of plaintiff's seven claims.  However, because Pennsylvania law does not recognize a claim for aiding and abetting fraud, Deloitte's motion to dismiss Claim V is granted.

1.   *Defendant's Motion to Dismiss Plaintiff's Negligence and Reliance-Based Claims is Denied Because This Court Will Not – Based Solely on the Pleadings in This Particular Case – Impute the DVI Insiders' Knowledge to DVI.*

Buckley brings claims for professional malpractice (Claim I), negligent misrepresentation (Claim III), and common law fraud (Claim IV).  (Compl. ¶¶ 182-93, 206-16, 217-25.)  Deloitte contends that because the DVI insiders were aware of the facts giving rise to the alleged fraud, their knowledge must be imputed to DVI, and consequently DVI may not bring any of these three negligence or reliance-based claims against Deloitte.  However, as discussed above, courts recognize an exception to the rule that knowledge of a corporate agent is imputed to the corporation where the agent acted adversely to the interest of the corporation.  See Pan American World Airways, Inc. v. Continental Bank, 435 F. Supp. 642, 651 (E.D. Pa. 1977) (citing the exception to imputation of knowledge to a corporation as described in the Restatement, Second, Agency § 282); In re Jack Greenberg, Inc., 212 B.R. 76, 83-85 (Bankr. E.D. Pa. 1997) (defendant's motion to dismiss for lack of reliance was denied because the court could not determine based on the face of the complaint whether the corporation's agent had acted to benefit the corporation, and therefore court could not decide whether to impute

the agent's knowledge).  Here, this Court will not determine – based solely on the

pleadings in Buckley's complaint and without the benefit of a factual record – whether or

not the DVI insiders acted to benefit the corporation, and therefore it cannot determine

whether to apply the exception to the general rule that a corporate agent's knowledge is

imputed to the corporation.  Accordingly, defendant's motion to dismiss claims I, III, and

IV based on the imputation doctrine must be denied.

> 2.    *Defendant's Motion to Dismiss Claims I and III is Denied Because
> Plaintiff's Negligence Claims Do Allege a Legally Cognizable
> Injury.*

Deloitte also contends that Buckley's claims of professional malpractice (Claim I)

and negligent misrepresentation (Claim III) must be dismissed for the additional reason

that they do not allege a legally cognizable injury.  Deloitte directs this Court's attention

to the recent decision of the U.S. Court of Appeals for the Third Circuit in In re CitX

Corp., 448 F.3d 672 (3d Cir. 2006).  In that case, the Court concluded that pursuant to

Pennsylvania law a plaintiff may not maintain a negligence-based action on a "deepening

insolvency" theory of damages.  Id. at 677.  The Third Circuit's panel in CitX Corp.

explained that:

> in predicting Pennsylvania law, [we defined "deepening
> insolvency"] as "an injury to [a debtor's] corporate property
> from the fraudulent expansion of corporate debt and
> prolongation of corporate life."  Lafferty, 267 F.3d at 347.  In
> that opinion, we concluded that deepening insolvency was a
> valid Pennsylvania cause of action.  Id. at 344.  Although we
> did describe deepening insolvency as a "type of injury," id. at
> 347, and a "theory of injury," id. at 349, we never held that it
> was a valid theory of damages for an independent cause of
> action.  Those statements in Lafferty were in the context of a

> deepening - insolvency cause of action. They should not be
> interpreted to create a novel theory of damages for an
> independent cause of action like malpractice.

CitX Corp., 448 F.3d at 677.  Consequently, Deloitte contends that Buckley cannot

maintain claims for professional malpractice and negligent misrepresentation to the

extent Buckley seeks damages for Deloitte's alleged "failure to uncover and force

disclosure of DVI's true economic condition," which permitted DVI to "take on debt that

would preclude the company from being repaired."  (Compl. ¶ 72.)

　　　　However, Buckley contends that it has in fact brought the claims of professional

malpractice and negligent misrepresentation based on allegations of damages stemming

from lost customers and lost value, and not from any damages stemming from a theory of

deepening insolvency.  Indeed, Buckley's complaint specifies that it experienced

"borrowers fleeing the company and massive losses in the worth of the company"

(Compl. ¶ 124), and that "DVI's good loan customers began leaving and less reputable

ones stopped paying on the loans" (id. ¶ 177).  Such allegations of damages in support of

Claims I and III are consistent with the CitX Corp. panel's reaffirmation of the finding of

the Lafferty panel decision that "'[w]here an independent cause of action gives a firm a

remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits,

then the firm may recover, without reference to the incidental impact upon the solvency

calculation.'"  Id. at 678 (quoting Lafferty, 267 F.3d at 575); see also Official Comm. of

Unsecured Creditors of Allegheny Health, Education and Research Foundation v.

PriceWaterhouse Coopers LLP, No. 2:00 Civ. 684, 2007 U.S. Dist. LEXIS 3331, *22

(E.D. Pa. Jan. 17, 2007) (distinguishing CitX).  Because Buckley has pled that DVI

suffered lost customers and lost economic value as a result of Deloitte's alleged professional malpractice and negligent misrepresentation, defendant's motion to dismiss Claims I and Claim III must be denied.

> 3.   *Defendant's Motion to Dismiss Claim III and IV is Denied Because Plaintiff Has Standing to Assert Fraud and Negligent Misrepresentation Claims Based on Statements Allegedly Made By Deloitte to DVI .*

In addition, Deloitte contends that Buckley's claims of negligent misrepresentation (Claim III) and fraud (Claim IV) should be dismissed because Buckley lacks standing to assert such causes of action to the extent they arise out of statements to DVI's lenders, the public, or the SEC. Deloitte cites to portions of the complaint in which Buckley details allegedly fraudulent statements made to those non-parties. (See Compl. ¶¶ 213, 218, 222, 224.) However, Buckley responds that Claim III and Claim IV are instead based only on the misrepresentations that Deloitte allegedly made to DVI. (See Compl. ¶¶ 215, 221-25, 227-36.) Indeed, even where Buckley alleges that Deloitte made misrepresentations to the SEC, it also alleges that those same misrepresentations were directed at DVI. For example, the complaint states "Deloitte knew and intended that <u>DVI</u> and its regulators would and did reasonably rely on the financial statements . . . ." (<u>Id.</u> ¶ 232) (emphasis added). Therefore, defendant's motion to dismiss Claims III and IV is denied.

> 4.   *Defendant's Motion to Dismiss Claim II is Denied Because Plaintiff Has Stated a Valid Claim for Breach of Contract Based on Specific Allegations of Breach as Opposed to Mere Allegations that Deloitte Did Not Comply With Generally Accepted Accounting Standards.*

Deloitte contends that Buckley's claim for breach of contract (Claim II) must be dismissed because it is based improperly on allegations that Deloitte failed to conform with Generally Accepted Auditing Standards (GAAS) and "other standards imposed by the [American Institute of Certified Public Accountants]."  (See Compl. at ¶¶ 200-02.) Deloitte correctly notes that Pennsylvania courts do not allow breach of contract claims based on allegations that an accountant failed to perform services with a requisite level of professional care.  See Foster v. Alexander & Alexander Servs., No. 91-1179, 1995 U.S. Dist. LEXIS 711, *8 (E.D. Pa. Jan. 23, 1995) ("Failure to perform a service with the requisite level of professional care typically constitutes a claim of negligence, not breach of contract.") (quoting Official Comm. of Unsecured Creditors of Corell Steel v. Fishbein & Co., P.C., No. , 1992 U.S. Dist. LEXIS 11618, * 17 (E.D. Pa. Aug. 10, 1992) (accountant's duty to act in accordance with Generally Accepted Accounting Principles arises by law, regardless of contract terms)).

However, Buckley contends that its claim is based on Deloitte's breach of numerous specific obligations set out in the contract between Deloitte and DVI.  For example, Buckley specifically alleges that DVI abruptly withdrew from the DVI engagement prior to completing the auditing services it had agreed to perform, when it knew DVI needed to file its Form 10-Q filing with the SEC – thereby effectively hanging DVI "out to dry."  (Compl. ¶¶ 52, 126, 140.)

Thus, to the extent Claim II was based on allegations that Deloitte failed to conform to auditing standards established by the accounting profession in its conduct of audits of DVI (see compl. ¶¶ 59-62, 90-96, 126-141), Buckley's allegations are not

actionable pursuant to the particular cause of action of breach of contract.  However, to the extent Claim II is based on allegations that Deloitte breached a term of its contracts with DVI, Buckley has stated a valid claim of breach of contract.  Accordingly, defendant's motion to dismiss Claim II is denied.

> 5.  *Defendant's Motion to Dismiss Claim IV Is Denied Because Plaintiff Has Plead Fraud with Sufficient Particularity.*

Count IV in Buckley's complaint alleges fraud.  (Compl. ¶¶ 217-25.)  To maintain an action for fraud pursuant to Pennsylvania law, a claimant must allege:  "(1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance."  Bortz v. Noon, 556 Pa. 489, 499, 729 A.2d 555 (Pa. 1999); see also Taylor v. Creditel Corp., No. 04-CV-2702, 2004 U.S. Dist. LEXIS 25149, *17 n.5 (E.D. Pa. Dec. 13, 2004).

Deloitte contends that Buckley's fraud claim in Count IV lacks the requisite specificity required by Rule 9(b) of the Federal Rule of Civil Procedure, which provides that "the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'"  Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004) (citing Seville Indus. Mach. Corp. v.

<u>Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984)).  "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  <u>Id.</u> at 224.  In addition, "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation."  <u>Id.</u>

Here, Buckley's complaint provides Deloitte with the specific dates of the allegedly fraudulent misrepresentations by describing the specific documents executed on specific dates in which those misrepresentations were allegedly made, including statements as to when the representations were made.  (See Compl. ¶¶ 150, 220.)  The complaint further alleges that Deloitte was either aware of the falsity of these statements or was at least reckless as to whether they were true or false, (<u>id.</u> ¶ 223), and that Deloitte's misrepresentations were made with the intent of misleading DVI and its creditors into relying on them (<u>id.</u> ¶ 218, 224).  The complaint also alleges justifiable reliance by DVI (<u>id.</u> ¶¶ 221-22) and injury (<u>id.</u> 225).

Thus, the complaint clearly details the dates and specific nature of Deloitte's alleged misrepresentations, to whom those misrepresentations were directed, scienter, justifiable reliance, and damages.  These allegations plead fraud with sufficient particularity, and consequently, Deloitte's motion to dismiss is denied with respect to Claim IV.

> 6.    *Defendant's Motion to Dismiss Claim V is Granted Because Pennsylvania Law Does Not Recognize a Claim for Aiding and Abetting Fraud.*

Deloitte contends that Claim V of Buckley's complaint must be dismissed because the Pennsylvania Supreme Court has not recognized a cause of action for aiding and abetting fraud.  Indeed, in two civil actions arising out of the same DVI bankruptcy as this action, each court dismissed the claim of aiding and abetting fraud because such a cause of action has not been recognized in Pennsylvania.  See Fleet Nat'l Bank v. O'Hanlon, No. 04-1277, 2005 U.S. Dist. LEXIS 44036, *33 (E.D. Pa. Sept. 12, 2005) ("The Pennsylvania Supreme Court has never recognized a cause of action for aiding and abetting fraud."); WM High Yield Fund v. O'Hanlon, No. 04-3423, 2005 U.S. Dist. LEXIS 12064, *50 (E.D. Pa. May 13, 2005).  Similarly, courts in several cases unrelated to this one have also concluded that Pennsylvania law does not recognize the tort of aiding and abetting fraud.  See Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc., 187 F. Supp. 2d 400, 413 (W.D. Pa. 2002); S. Kane & Son Profit Sharing Trust v. Marine Midland Bank, No. 95-7058, 1996 U.S. Dist. LEXIS 8023, at *30 (E.D. Pa. June 13, 1996); Constitution Bank v. DiMarco, 836 F. Supp. 304, 309 (E.D. Pa. 1993); Clayton v. McCullough, 670 A.2d 710, 713, 448 Pa. Super. 126 (Pa. Super. 1996). Accordingly, because Pennsylvania law does not recognize a claim for aiding and abetting fraud, this Court grants Deloitte's motion to dismiss Claim V.

> 7.  *Defendant's Motion to Dismiss Claim VI for Aiding and Abetting Breach of Fiduciary Duty is Denied.*

Count VI in Buckley's complaint alleges aiding and abetting breach of fiduciary duty.  (Compl. ¶¶ 238-47.)  Deloitte has moved to dismiss this claim contending that 1) it is not recognized by Pennsylvania law, and 2) Buckley lacks standing to assert this claim.

In response, Buckley contends that Delaware law governs his claim for aiding and abetting breach of fiduciary duty.  (See Stipulation dated May 7, 2007, ¶ 2.)

Because plaintiff filed the lawsuit in New York, this Court must apply New York's choice of law rules to determine which state's substantive law governs.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989) ("A federal court sitting in diversity . . . must apply the choice of law rules of the forum state.").  Pursuant to New York's choice of law rules – and specifically the "internal affairs doctrine" – a claim of breach of fiduciary duty owed to a corporation is governed by the law of the state of incorporation.  Walton v. Morgan Stanley & Co., 623 F.2d 796, 798 n.3 (2d Cir. 1980).  Moreover, courts in this district have regularly held that because claims of aiding and abetting a breach of fiduciary duty relate to the internal affairs of a corporation, they are also governed by the law of the state of incorporation.  See, e.g., Allied Ir. Banks, P.L.C. v. Bank of Am., N.A., No. 03 Civ. 3748, 2006 U.S. Dist. LEXIS 4270, *35 (S.D.N.Y. Feb. 2, 2006); BBS Norwalk One, Inc. v. Raccolta, Inc., 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999); Lou v. Belzberg, 728 F. Supp. 1010, 1023 (S.D.N.Y. 1990).

Here, DVI, DVI-FS, and DVI-BC were all corporations organized and existing under the laws of Delaware.  (Compl. ¶ 30.)  Accordingly, Buckley's claim of aiding and abetting breach of fiduciary duty is governed by Delaware state law, which recognizes this claim, see Ivanhoe Partners v. Newmont Mining Corp., 535 A.2d 1334, 1344 (Del.

1987); <u>Teachers' Ret. Sys. v. Aidinoff</u>, 900 A.2d 654, 671 (Del. Ch. 2006), and therefore

Deloitte's motion to dismiss Claim VI cannot be granted for this reason.[1]

     As noted above, Deloitte also contends that Buckley lacks standing to pursue this

claim.  Specifically, Deloitte contends that a corporation lacks standing to sue its own

officers and directors for breaches of fiduciary duty, and consequently that it cannot be

sued for aiding and abetting the DVI officers' alleged violation of their fiduciary duties.

However, to the contrary, Delaware law recognizes Buckley's standing as a trustee to

bring this claim for aiding and abetting a breach of fiduciary duty.  <u>See</u> <u>In re OODC,

LLC</u>, 321 B.R. 128, 148 (Bankr. D. Del 2005) ("Courts have held that a trustee may sue

its officers and directors for breach of fiduciary duty . . . . Accordingly, we conclude that

the Trustee has standing to bring the claims for breach of fiduciary duty and aiding and

abetting that breach.")  Accordingly, Deloitte's motion to dismiss Claim VI is denied.

     8.     *Defendant's Motion to Dismiss Plaintiff's Claim for Deepening
          Insolvency is Denied*.

     Count VII in Buckley's complaint alleges a claim for "deepening insolvency."

(Compl. ¶¶ 248-61.)   Although the Pennsylvania Supreme Court has not yet addressed

the issue, the Third Circuit has defined this claim under Pennsylvania law as "an injury to

[a debtor's] corporate property from the fraudulent expansion of corporate debt and

prolongation of corporate life."  <u>Lafferty</u>, 267 F.3d at 347.  The Third Circuit explained

that "[t]he fraudulent and concealed incurrence of debt can damage [a corporation's]

---

[1] Even if Pennsylvania law applied to this cause of action, several Pennsylvania courts applying
Pennsylvania law – including one in an action related to the present one – have in fact recognized the cause
of action of aiding and abetting breach of fiduciary duty pursuant to Pennsylvania law.  <u>See WM High
Yield Fund, et al. v. O'Hanlon, et al.</u>, No. 04-CV-3423, 2005 U.S. Dist. LEXIS 33569, *49 (E.D. Pa. April
29, 2005) (citing <u>Koken v. Steinberg</u>, 825 A.2d 723 (Pa. Commw. Ct. 2003)); <u>Adena, Inc. v. Cohn</u>, 162 F.
Supp. 2d 351, 357-58 (E.D. Pa 2001).

value in several ways," such as, for example, "undermin[ing] a corporation's relationships with its customers, suppliers, and employees,"  or "caus[ing] the dissipation of corporate assets."  Id. at 349-50.  "These harms can be averted, and the value within an insolvent corporation salvaged, if the corporation is dissolved in a timely manner, rather than kept afloat with spurious debt."  Id. at 350.

Deloitte acknowledges that the Third Circuit has recognized a claim for deepening insolvency, but contends that Buckley has not pled fraud as part of this claim, as required by Lafferty and CitX.  See id. at 349 (defining the injury as "fraudulent expansion of corporate debt and prolongation of corporate life") (emphasis added); CitX, 448 F.3d at 681 (refusing to extend the scope of deepening insolvency beyond allegations based in fraud).  Deloitte correctly notes that some of the allegations within the portion of the complaint pertaining to this claim sound in negligence.  For example, the complaint alleges that Deloitte's actions were "grossly negligent, reckless and at times fraudulent." (Compl. ¶ 257.)  However, even if Buckley included allegations of negligence – upon which this particular claim cannot lie – in this particular section of the complaint, Buckley's claim should nevertheless survive the motion to dismiss because he also included allegations of fraud within the same section.  (Id.)  Therefore, because Buckley has pleaded fraud, and has done so with particularity as discussed above, Deloitte's motion to dismiss Claim VII is denied.

9.    *Defendant's Motion to Dismiss Claim I is Denied Because This Court Excuses Plaintiff's Failure to File a Certificate of Merit Timely.*

Deloitte also contends that Buckley's professional malpractice claim (Claim I) must be dismissed because Buckley failed to comply with the Pennsylvania requirement that a plaintiff in such an action must file a certificate of merit within sixty days of filing the complaint.  Specifically, the Pennsylvania Rules of Civil Procedure require that in an action based on professional malpractice, the plaintiff:

> [S]hall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or  (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R.C.P. No. 1042.3(a).[2]  Here, Buckley acknowledges that he did not comport with this Pennsylvania rule.  Buckley filed the complaint in this action on April 28, 2006, but did not file the certificate of merit until August 11, 2006, which was approximately six weeks beyond the deadline found within the Pennsylvania Rules of Civil Procedure.

However, a plaintiff's failure to comply with the Pennsylvania certificate-of-merit requirement is excusable where that failure did not cause the defendant prejudice, or where the plaintiff's claim was not clearly meritless.  See, e.g., Scaramuzza v. Sciolla,

---

[2]  The Pennsylvania certificate of merit rule is substantive state law that must be applied as substantive state law by federal courts sitting in diversity.  See Gazi Abdulhay v. Bethlehem Med. Arts, L.P., No. 03-CV-04347, 2005 U.S. Dist. LEXIS 21785l, *20 (E.D. Pa. Sept. 27, 2005) ("Pennsylvania Rule 1042.3 mandating a certificate of merit in professional negligence claims, is substantive under the Erie Rule and must be applied as such by the court."); see also Chamberlain v. Giampapa, 210 F.3d 154, 158-61 (3d Cir. 2000) (the New Jersey affidavit of merit statute is substantive state law).

345 F. Supp. 2d 508, 510-11 (E.D. Pa. 2004) (dismissal of a complaint with prejudice for failure to comply with Pa. R. Civ. P. 1042.3 improper where defendant did not establish prejudice); see also Keybank Nat'l Ass'n v. Reidbord, No. 05-144, 2006 U.S. Dist. LEXIS 74609 (W.D. Pa. Nov. 29, 2005) ("[I]t is within a court's discretion to accept late filed certificates in light of all the facts and circumstances of a particular case."); Gazi Abdulhay v. Bethlehem Med. Arts, L.P., No. 03-CV-04347, 2005 U.S. Dist. LEXIS 21785l, *36-37 (E.D. Pa. Sept. 27, 2005) ("[W]e conclude that the policy behind the Pennsylvania certificate-of-merit rule would not be served by dismissing plaintiffs' professional negligence claim. We believe that the Pennsylvania rule is designed to dismiss unfounded, meritless professional negligence cases at an early stage."); Anspach v. City of Phila., No. 05-810, 2005 U.S. Dist. LEXIS 16587, *4-6 (E.D. Pa. June 20, 2005).   Here, because Buckley has indeed filed a certificate of merit – albeit late – in support of this claim, because plaintiff's claim is not frivolous on the face of the complaint, and because defendant cannot demonstrate that it has suffered any prejudice due to the late filing, this Court will not dismiss Claim I.

**III.    Conclusion**

Deloitte's motion to dismiss is denied in part and granted in part.  To the extent that Deloitte's motion to dismiss is based on the defense of *in pari delicto*, it is denied.  In addition, to the extent that Deloitte's motion to dismiss the complaint is based on various independent legal reasons, it is denied with respect to Claim I, Claim II, Claim III, Claim IV, Claim VI, and Claim VII.  However, because Pennsylvania law does not recognize a

cause of action for aiding and abetting fraud, Deloitte's motion to dismiss Claim V is

granted.

Dated: New York, New York
       May 21, 2007

SO ORDERED:

Sidney H. Stein, U.S.D.J.